

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JANE CUMMINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:18-CV-649-A |
| | § | |
| PREMIER REHAB, P.L.L.C., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant, Premier Rehab Keller, P.L.L.C. d/b/a Premier Rehab, P.L.L.C. ("Premier"), to dismiss. The court, having considered the motion, the response of plaintiff, Jane Cummings ("Cummings"), the reply, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Allegations

On August 7, 2018, Cummings initiated this action by the filing of her original complaint. Doc. 1.[1] She filed her amended complaint on October 25, 2018. Doc. 11. Cummings alleged the following in her amended complaint:

She is deaf, her first and primary language is American Sign Language ("ASL"), and, because of her deafness, she has limited

---

[1] The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:18-CV-649-A.

proficiency in English. Id. at 3 ¶¶ 9-10. Cummings is also legally blind due to albinism, and, as a result, she cannot communicate effectively in writing. Id. at 3 ¶¶ 11-12.

On October 27, 2016, Cummings contacted Premier to schedule an appointment for physical therapy and requested an ASL interpreter. Id. at 3-4 ¶ 15. Premier told her that it would not provide an interpreter, but that she could attend her appointment without one or provide one herself. Id. at 4 ¶ 16. Premier also offered to communicate with her through written notes, lip reading, and gesturing. Id. Cummings explained that such methods were ineffective because of her visual impairment, but Premier again denied her an interpreter. Id. at 4 ¶ 17. She received physical therapy from another provider but "received unsatisfactory care." Id. at 4 ¶ 17. She contacted Premier to request an interpreter on November 2, 2016, and again on February 28, 2017, but Premier refused to provide her an interpreter each time. Id. at 4 ¶ 19-20. Premier's discrimination also caused her "to suffer humiliation, frustration, and emotional distress." Id. at 5 ¶ 27. She "still wishes to access Defendant's services and receive care in Defendant's facilities." Id. at 5 ¶ 28.

Premier discriminated against her on the basis of disability by denying her an interpreter, in violation of Title III of the

Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12182(a) (id. at 7 ¶ 41), Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 (id. at 8 ¶ 49), Section 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116 (id. at 10 ¶ 59), and Section 121.003 of the Texas Human Resources Code ("THRC") (id. at 11 ¶ 70).

\* \* \* \* \* \* \*

Cummings sought in her complaint a declaratory judgment that Premier, in violation of the ADA, RA, ACA, and THRC, discriminated against her on the basis of disability. Id. at 12 ¶ (a). She also requested injunctive relief, compensatory and exemplary damages, and attorney's fees and costs. Id. at 12 ¶¶ (b)-(d). Cummings withdrew her claim under the THRC, however, in her response to Premier's motion to dismiss. Doc. 15 at 5 n.3.

II.

Grounds of the Motion

Premier moved to dismiss Cummings's complaint for lack of subject matter jurisdiction, based on its argument that she lacks standing, and for failure to state a claim upon which relief can be granted.

III.

Analysis

A. Standing

For the court to have subject matter jurisdiction over a case, the plaintiff must have standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). At the pleading stage, the plaintiff must allege facts that allow the court to infer that she has standing. Bennett v. Spear, 520 U.S. 154, 167-68 (1997). Standing consists of three elements:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Defenders of Wildlife, 504 U.S. at 560 (citations and alterations omitted). The plaintiff must allege standing for each form of relief sought. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

The court finds that Cummings did not allege standing to seek equitable relief, but that she did allege standing to seek damages. Accordingly, her claims for equitable relief, but not damages, should be dismissed for lack of subject matter

4

jurisdiction.

1. Standing to Seek Equitable Relief Was Not Alleged

To allege standing to seek equitable relief, a plaintiff must allege that the defendant either (1) poses an imminent threat of harm, City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983), or (2) is currently inflicting harm, Friends of the Earth, 528 U.S. at 184-85.

a. Imminent Harm Was Not Alleged

To allege standing based on a future injury, the plaintiff must allege that there is a "real or imminent threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). A plaintiff may allege that she faces an imminent threat of harm by alleging facts from which the court can infer that she is likely to return to the public accommodation. Hunter v. Branch Banking & Trust Co., No. 3:12-CV-2437-D, 2013 WL 4052411, at *2 (N.D. Tex. Aug. 12, 2013). In deciding whether to make such an inference, courts consider "(1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." Id.; see also Defenders of Wildlife, 504 U.S. at 564 (holding that "'some day' intentions" without "concrete plans" do

5

not support finding of "actual or imminent injury"). In evaluating the defendant's proximity to the plaintiff, courts consider the distance between the two and the availability of closer alternatives. Hunter, 2013 WL 4052411, at *2.

Here, the court cannot infer that Cummings is likely to return to Premier. The only pertinent fact she alleged is that she "still wishes to access Defendant's services and receive care in Defendant's facilities." Doc. 11 at 5 ¶ 28. This statement is a "'some day' intention[]," and Cummings alleged no "concrete plans" to return. See Defenders of Wildlife, 504 U.S. at 564. Further, the facts alleged do not allow us to infer that she lives in close proximity to Premier, or that there are few closer alternatives. While the court could conduct research to make such a finding, it is Cummings's burden to allege facts that support an inference of standing. And, based on the facts alleged, the court cannot infer that she has visited Premier before or that she travels frequently to Keller, Texas, where Premier is located. Thus, the facts alleged are insufficient to support a conclusion that Cummings is likely to return to Premier. As a result, Cummings did not allege that she faces an imminent threat of harm for which she has standing to seek relief.

    b.    <u>Ongoing Harm Was Not Alleged</u>

To allege standing based on an ongoing injury, the plaintiff

must allege that "she knows that the public accommodation is noncompliant and that she would visit that accommodation were it compliant." Hunter, 2013 WL 4052411, at *3. In determining whether the plaintiff alleged that she would visit the accommodation were it ADA-compliant, courts apply the same four-factor test they use to evaluate the plaintiff's intent to return. Id.

Alternatively, the plaintiff may allege that an ADA violation "actually affects his activities in some concrete way." Frame v. City of Arlington, 657 F.3d 215, 235 (5th Cir. 2011) (holding that plaintiffs had standing to seek injunction, because they alleged that inaccessible sidewalks forced them to take longer routes); see also Deutsch v. Annis Enters., 882 F.3d 169, 174 (5th Cir. 2018) (en banc) (holding that plaintiff lacked standing to seek injunction for ADA violation, because plaintiff only visited defendant's business once, showed no intent to return, and failed to show that alleged ADA violation impacted day-to-day life).

Here, Cummings did not allege that Premier is currently harming her in any way. As explained above, we cannot infer, based on the facts provided, that Cummings is likely to return to Premier. For this reason, she did not allege an ongoing harm under the Hunter factors. And, she did not allege that Premier's

alleged discrimination is currently impacting her daily life. As a result, Cummings did not allege that Premier is causing her an ongoing harm that could serve as the basis for standing.

Because Cummings failed to allege that she faces either an imminent threat of harm or an ongoing harm, she failed to allege an injury for which she can seek equitable relief. For this reason, the court cannot infer that she has standing to seek equitable relief, and her claims for such relief should be dismissed.

2. <u>Standing to Seek Damages Was Alleged</u>

Cummings alleged in her complaint that Premier discriminated against her, and that such discrimination "caus[ed] Plaintiff to suffer humiliation, frustration, and emotional distress." Id. at 5 ¶ 27. Unequal treatment, <u>Heckler v. Mathews</u>, 465 U.S. 728, 738-40 (1984), and emotional harm, <u>Rideau v. Keller Indep. Sch. Dist.</u>, 819 F.3d 155, 168-69 (5th Cir. 2016), are cognizable injuries for standing purposes. She alleged that Premier's discriminatory conduct caused such injuries and, for this reason, the court can reasonably infer that a judgment against Premier would redress such injuries. Therefore, Cummings alleged facts from which the court can infer that she has standing to seek damages for unequal treatment and emotional harm. For this reason, said claims should not be dismissed for lack of subject

matter jurisdiction.

B.  Failure to State a Claim

   1.  Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Id. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. To

9

allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

2. No Plausible Claim for Damages Was Alleged

Damages are not recoverable under Title III of the ADA. Frame v. City of Arlington, 575 F.3d 432, 438 & n.5 (5th Cir. 2009) (citing 42 U.S.C. § 12188(a); Newman v. Piggie Park Enters., 390 U.S. 400, 402 (1968)).

Damages for emotional distress are unrecoverable in actions brought to enforce Section 504 of the RA. United States v. Forest Dale, Inc., 818 F. Supp. 954, 970 (N.D. Tex. 1993); Witbeck v. Embry-Riddle Aeronautical Univ., Inc., 269 F. Supp. 2d 1338, 1340 (M.D. Fla. 2003) (citing Barnes v. Gorman, 536 U.S. 181, 187-89 (2002)); Khan v. Albuquerque Pub. Sch., 652 F. Supp. 2d 1211, 1221-25 (D.N.M. 2003) (same). Accordingly, they are also unavailable in actions brought under Section 1557 of the ACA. See 42 U.S.C. § 18116(a) (incorporating by reference enforcement mechanisms available under Section 504).

In Bell v. Hood, the Supreme Court held, "Where legal rights

10

have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." 327 U.S. 678, 684 (1946). But, as the Court later clarified, punitive damages are unavailable in actions brought under anti-discrimination statutes passed pursuant to the Spending Clause. Barnes v. Gorman, 536 U.S. 181, 187-89 (2002). The Court analogized the receipt of federal funds to the formation of a contract with Congress and explained:

> When a federal-funds recipient violates conditions of Spending Clause legislation, the wrong done is the failure to provide what the contractual obligation requires; and that wrong is "made good" when the recipient compensates the Federal Government or a third-party beneficiary (as in this case) for the loss caused by that failure. Punitive damages are not compensatory, and are therefore not embraced within the rule described in Bell.

Id. at 189.

The rule in Barnes "restricts the available damages to actual compensation for pecuniary damages." Khan, 652 F. Supp. 2d at 1222 (citing Witbeck, 269 F. Supp. 2d at 1340). Damages for emotional distress, like punitive damages, do not compensate plaintiffs for their pecuniary losses, but instead punish defendants for the outrageousness of their conduct. Id. at 1224-25. They are also unforeseeable at the time recipients accept federal funds and expose them to "unlimited liability." Id. For

these reasons, plaintiffs cannot recover such damages in actions brought under Section 504. Id. at 1225.

Cummings sought compensatory damages pursuant to Title III of the ADA, Section 504 of the RA, and Section 1557 of the ACA. Doc. 11 at 13 ¶ (i). The only compensable injuries that Cummings alleged Premier caused were "humiliation, frustration, and emotional distress." Id. at 5 ¶ 27. As stated, Title III of the ADA does not provide her a cause of action to pursue any damages. And, Section 504 of the RA and Section 1557 of the ACA do not provide her a cause of action to pursue damages for emotional harm, and she alleged no other statute that does. Therefore, with respect to her damages claims, the court cannot infer from the facts alleged that Cummings has a plausible right to relief. As a result, such claims should be dismissed.

* * * * * * *

In plaintiff's response to the motion to dismiss, plaintiff seems to be suggesting that the court authorize her to file yet another amended complaint. Doc. 15 at 9.

Local Civil Rule LR 5.1(c) requires that any document containing more than one pleading, motion, or other paper "clearly identify each pleading, motion, or other paper in its

title." Local Civil Rule 15.1(a) further provides:

> When a party files a motion for leave to file an amended pleading . . . , the party must attach a copy of the proposed amended pleading as an exhibit to the motion. The party must also submit with the motion an original and a judge's copy of the proposed pleading.

Plaintiff's request does not comply with any of these requirements. Her response does not identify any motion for leave to amend in its title. Nor did she attach a copy of her proposed amended complaint as an exhibit, and she did not submit an original or judge's copy of a proposed amended complaint.

Plaintiff can hardly claim ignorance of the Local Civil Rules because she was reminded of them in a memorandum opinion and order the court issued on January 3, 2019, in its case No. 4:18-CV-546-A, which was an action virtually identical to the instant one that plaintiff had filed against an optometrist, styled "Jane Cummings, Plaintiff, v. Total Eye Care, Defendant."[2]

Because of her noncompliance, the court does not consider that she actually made a motion for leave to amend. Moreover, even if the court were to interpret what she said as a motion for leave, the court could not evaluate the merit of such a motion without any knowledge of what another amended complaint might say. In any event, plaintiff has had more than a fair opportunity

---

[2] In the Total Eye Care action, the optometrist's office offered to provide an appropriate interpreter for plaintiff if she came to its place of business, but plaintiff was not satisfied because she insisted that the interpreter be "certified." Case No. 4:18-CV-546-A, Doc. #20 at 4, ¶ 19.

13

to plead her best case. Therefore, the court is not granting plaintiff leave to replead again.

IV.

Conclusion and Order

Because Cummings failed to allege facts from which we can infer that she has standing to seek equitable relief, and because she failed to state a claim for damages upon which relief can be granted, this court finds that Premier's motion to dismiss should be granted. Therefore,

The court ORDERS that Premier's motion to dismiss be, and is hereby, granted, and Cummings's claims in the above-captioned action be, and are hereby, dismissed.

SIGNED January 16, 2019.

JOHN MCBRYDE
United States District Judge